# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JAVIER HERNANDEZ,** | ) | |
| **Petitioner,** | ) | **Case No. 10 C 2337** |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **LINDA THOMAS, Warden, Metropolitan** | ) | |
| **Correctional Center,** | ) | |
| **Respondent.**[1] | ) | |

## MEMORANDUM OPINION AND ORDER

Following a 2006 stipulated bench trial in the Circuit Court of Cook County, Javier

Hernandez was convicted of possession of a controlled substance and sentenced to a 13-year

term of imprisonment.[2]  His *pro se* motion for a writ of habeas corpus pursuant to 28 U.S.C. §

2254 challenging the denial of his motion to suppress and the sufficiency of the evidence is

before the court.  For the following reasons, the petition is denied.

---

[1]  Petitioner Javier Hernandez (Federal Bureau of Prisons inmate number 04063-424 and Illinois Department of Corrections inmate number R61722) is currently in the custody of Linda Thomas, warden of the federal Metropolitan Correctional Center in Chicago, presumably due to a federal judgment of conviction. *See United States v. Hernandez*, 92 CR 143-1 (N.D. Ill.). Because the petitioner is not in state custody under the state-court judgment at issue in this case, the Illinois Attorney General as well as Linda Thomas are both proper respondents. *See* Rule 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts ("If the petitioner is not yet in custody — but may be subject to future custody — under the state-court judgment being contested, the petition must name as respondents both the officer who has current custody and the attorney general of the state where the judgment was entered."). Accordingly, the clerk is directed to add Illinois Attorney General Lisa Madigan as an additional respondent.

[2]  Petitioner Javier Hernandez and his brother, Gilbert Hernandez, were both involved in the traffic stop leading to Javier Hernandez's arrest.  To avoid confusion, the court will refer to the brothers by their first names.

## I.    Background

Javier contends that the trial court erroneously assessed credibility during his bench trial. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  Accordingly, the court will presume that the state court's factual determinations are correct for the purposes of habeas review as Javier neither contests them nor points to clear and convincing evidence to the contrary, and will view these factual determinations through the lens of the AEDPA in the discussion below.  *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002).

The following facts are drawn from the state court record (Dkt. 11) and the Illinois Appellate Court's opinion in Javier's direct appeal, *People v. Hernandez*, No. 01-06-3173 (Ill. App. Ct. Oct. 7, 2009) (unpublished order) (Dkt. 11-2).

### A.    Javier's Suppression Hearing

Following a traffic stop in the Back of the Yards neighborhood on Chicago's South Side, Javier was arrested and charged with possession of a controlled substance with intent to deliver. At the hearing on his motion to quash his arrest and suppress evidence, Javier presented four witnesses.

First, Sparkles Wages testified that she was sitting on her porch at 2232 West 50th Street on February 25, 2003, at approximately 1:00 p.m.  Wages knew Gilbert Hernandez because he lived across the street from her, but had never met Gilbert's brother, Javier.  Wages saw a van

drive down her street and pull into a parking space behind her home. Seconds later, a police car

came and parked near the van. Javier and the officers exited their vehicles. After the officers

searched Javier, Gilbert exited the van.

The Hernandez brothers placed their hands on top of the police car and Javier gave the

officers an object from his pocket that looked like a white card. At that point, Wages went inside

her home to get her baby ready for an excursion. She testified that she did not see Javier remove

a bag from his jacket and put it in the van or see him holding a bag.

Delores Keith, Sparkle Wages' aunt, was the second defense witness. Keith resided with

Wages and other relatives at 2232 West 50th Street. At approximately 1:00 p.m. on February 25,

2003, Keith was walking on the sidewalk near her house with the intent, like many Chicago

residents, of moving her car from its on-the-street parking space to a closer space. She saw a

van pulling into her desired parking space and "hollered" at the driver. Dkt. 11-7 at X-11. She

then saw a police car park behind the van, which had lightly tinted windows, and recognized

Officer Michael Poppish, who was in the neighborhood regularly.

According to Keith, after both Hernandez brothers exited their vehicle, Gilbert walked

across the street towards his house while the police directed Javier to the police car. Keith did

not see Javier put anything into the van, but saw him give Officer Poppish an object from his

pocket. After the officers searched the van, she noticed a bag lying on the driver's seat. *Id*. at X-

18 ("I seen a bag. I don't recall what kind of bag it was. It was something laying on the seat.").

Holding that hearsay is admissible in a hearing on a motion to suppress, the trial court allowed

Keith to testify that she heard the officer ask Javier if the bag was his and heard Javier respond,

"no." *Id*. at X-19.

Third, Gilbert testified on behalf of his brother. He testified that on February 25, 2003, they were driving to a carwash in a borrowed van and quickly realized they had forgotten to bring towels to dry the van. Because they had only made it down the block, Javier put the van in reverse back towards Gilbert's home at 2241 West 50th Street and parked. Javier exited the van in search of towels, leaving Gilbert, who had a prosthetic leg, in the van. When Javier left the van, he was not holding anything and nothing was on the driver's side seat.

After the police arrived, Gilbert also exited the van. The police instructed the brothers to place their hands on the hood of the police car, which was parked directly behind the van. The police took their IDs, checked for outstanding warrants, and returned their IDs. Gilbert knew Officer Poppish from the neighborhood and from previous encounters with him. Officer Poppish told the other officer to search the van. After the second officer did so, he whispered something to Officer Poppish. The officers then put Javier into the back of the police car and told Gilbert he could leave.

Officer Poppish was the final witness for the defense. On February 25, 2003, Officer Poppish and his partner, Officer Steve Insley, were working together. As Officer Poppish drove on Oakley towards 50th Street on routine patrol, he noticed a gold van driving in reverse on Oakley. The van went through the intersection without stopping at a stop sign before halting briefly in the middle of the intersection. The van then drove forward at a high rate of speed. After the van stopped again, Javier exited as Officer Poppish parked approximately 10 feet behind it. On direct examination, Officer Poppish testified that he saw Javier remove a freezer bag from his jacket and place it in the van. His partner ultimately retrieved a freezer bag containing a substance believed to be heroin from the driver's area.

On cross-examination, Officer Poppish testified he saw Javier exit from the driver's side of the van, reach into his jacket, pull out a freezer bag containing smaller bags of a substance that Officer Poppish believed was heroin, and place the bag in the van before walking away. Officer Poppish told his partner to grab Javier. Some time later, Gilbert exited the van and walked away without being detained. According to Officer Poppish, he did not take an ID from Javier during the stop but issued a traffic ticket to him.

After Javier rested, the State moved for a directed finding. The parties stipulated that there were no outstanding warrants for either of the Hernandez brothers or the van. The trial court denied the State's motion and the State presented Stephen Glazier as a rebuttal witness. Glazier was an investigator for a process server company. Defense counsel hired him to interview witnesses for this case. As part of his investigation, he took statements from Wages and Keith. Glazier confirmed that Wages told him the police placed Javier up against the van and searched him. After the defense successfully objected to the question, the State withdrew it and rested in rebuttal. The trial court then allowed Javier to reopen his case to supplement the record with the parties' stipulation that on May 12, 2000, at 10:30 p.m., Officer Poppish was an arresting officer in connection with Gilbert's arrest in the vicinity of 2238 West 50th Street for unlawful use of a weapon by a felon.

After considering the parties' arguments and obtaining a copy of the transcript for the motion to suppress hearing, the trial court denied the motion to quash and suppress on August 23, 2005, stating:[3]

---

[3] The court notes that the respondent's answer only rarely includes citations to the record. The court located relevant portions of the transcript using record citations in Javier's state court appellate brief. The citations in that brief were often unclear given the organization

-5-

That on or about February 25, 2003, at approximately 1:00 in the afternoon, the Defendant was in a Dodge Caravan. That he was stopped for a traffic violation by Chicago police officers in the vicinity of 5000 South on Oakley. That the officer pulled behind the Defendant. That the defendant got out on the driver's side. That at that time he was wearing a jacket. That he removed the plastic bag containing a tan substance from his jacket, placed it in the vehicle, and walked off. That the officer then stopped the Defendant. That he in fact brought the Defendant back, went into the van and recovered a plastic bag. The officer testified that based on his experience, when he saw the plastic bag containing the tan substance he believed that to be heroin. That subsequently the Defendant was taken to the station and charged . . . .

That the officer in fact had reasonable grounds to stop the Defendant, based on his traffic violations. That the officer then observed the Defendant in plain view taking the bag, that it contained heroin, based on their observations, that contained substance in the bag [sic]. That at that particular time they had probable cause to seize that and place the Defendant under arrest.

Dkt. 11-7 at PageID#903-04.

## B.    Javier's Bench Trial

At the bench trial, the parties stipulated to all of the testimony presented during the

hearing on Javier's motion to quash and suppress. The trial court accepted the stipulation but

noted it would consider only admissible evidence and would exclude hearsay testimony. The

parties also stipulated that if called to testify, Officer Insley would state he was a member of the

Chicago Police Department, inventoried the freezer bag recovered from the van, and kept the bag

in his constant care and control from the time it was recovered until it was deposited it with the

Illinois State Police Crime Lab for testing and analysis. Next, the parties stipulated that if called

---

of the documents submitted by the respondent but at least provided a general guide as the court hunted through the record. The trial court's critical August 23d ruling was particularly difficult to find. It appears to begin at Dkt. 11-7, Page ID#901. The court cannot be more precise since the CM/ECF headers for the state court record are mostly obscured as the respondent elected to file copies of the state court with irregular black borders. The court assumes that the borders were caused by the respondent's photocopying method. Counsel must ensure that all future filings contain citations to the state court record and legible CM/ECF headers.

to testify, Cotelia Fulcher, a forensic chemist at the Illinois State Police Crime Lab, would state that she received the bag from the Chicago Police Department. The bag contained 67 smaller plastic bags each containing a tan substance, 57 of the smaller bags tested positive for heroin, and the total weight of the heroin was 1,004.8 grams.

The trial court ultimately granted Javier's motion for a directed finding regarding the charge of possession with intent to deliver but found him guilty of possession of a controlled substance. It then sentenced him to a 13-year term of imprisonment.

### C.      Javier's Direct Appeal

Javier appealed the denial of his motion to quash arrest and suppress evidence, arguing that Officer Poppish's testimony during the suppression hearing was not credible. He also contended that the evidence was insufficient to support the guilty verdict. On October 7, 2009, the Illinois Appellate Court affirmed. Javier filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court repeating the two issues he had presented to the Illinois Appellate Court. On January 27, 2010, the Illinois Supreme Court denied the PLA. Javier did not file a petition for a writ of certiorari with the United States Supreme Court.

## II.      Discussion

Javier filed a timely federal habeas petition pursuant to 28 U.S.C. § 2254 repeating the two issues he presented to the state courts. In support, he incorporated his state filings by reference. A petition seeking relief under § 2254 must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *Mayle v. Felix*, 545 U.S. 644, 655–56 (2005) (quoting Rule 2(c) of the Rules Governing Section 2254 Cases). Moreover, a petition which fails to set out the grounds for relief and incorporates state court

briefs by reference is insufficient.  *See Regains v. Robert*, No. 11 C 5445, 2012 WL 2513935, \*6

(N.D. Ill. Jun. 27, 2012) (collecting cases).  Nevertheless, because Javier is proceeding *pro se*,

the court will construe his pleadings liberally and allow him to pursue the claims he presented to

the state courts.

For the following reasons, Javier is not entitled to federal habeas relief because: (1) his

claim based on the denial of his motion to quash and suppress is barred by Supreme Court

precedent; and (2) the state courts' findings with respect to the sufficiency of the evidence

presented at trial are neither contrary to, nor an unreasonable application of, clearly established

federal law as determined by the Supreme Court.

**A.      Motion to Quash and Suppress**

Javier first argues that the state courts violated his rights under the Fourth Amendment

when they accepted Officer Poppish's testimony and rejected the testimony presented by the

defense at the suppression hearing.  According to Javier, no reasonable fact finder could have

believed Officer Poppish's version of events because it is facially incredible to conclude that

Javier spotted the officers at approximately 1:00 p.m. in the afternoon while driving, parked,

pulled a large bag of heroin from his jacket, placed the bag in clear sight on the van's front seat,

and attempted to flee on foot.

Javier appears to be asking this court to revisit the state court's findings of fact from the

suppression hearing.  This request is foreclosed by *Stone v. Powell*, 428 U.S. 465 (1976).  In

*Stone v. Powell*, the Supreme Court held that criminal defendants may not seek collateral review

of Fourth Amendment exclusionary rule claims under § 2254 if they received "an opportunity for

full and fair litigation of" their Fourth Amendment claims in state court.  428 U.S. at 481-82.

Such an opportunity exists when: (1) the petitioner has "clearly informed the state court of the factual basis for [his] claim and has argued that those facts constitute a violation of his fourth amendment rights, and (2) the state court has carefully and thoroughly analyzed the facts and (3) applied the proper constitutional case law to the facts." *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2003) (quoting *Pierson v. O'Leary*, 959 F.3d 1385, 1391 (7th Cir. 1992)); *see also Monroe v. Davis*, — F.3d —, No. 10-3407, 2013 WL 1338044 (7th Cir. Apr. 4, 2013).

Javier does not claim that the state court proceedings failed to satisfy this three-part test. Instead, he asserts that the state courts got it wrong because no reasonable person could believe an individual about to be apprehended by the police would pull a bag of drugs from his clothing and place it in plain sight inside a vehicle that is about to be searched. The Seventh Circuit, however, has held that while *Stone* requires states to "provide full and fair hearings so that the exclusionary rule may be enforced with reasonable (though not perfect) accuracy" in direct proceedings, "it is inappropriate to use the exclusionary rule as the basis of collateral relief because it would not appreciably augment the deterrence of improper police conduct." *Hampton*, 296 F.3d at 562-63.

The Seventh Circuit then carved out a narrow exception and held that a federal habeas court may consider the merits of a Fourth Amendment exclusionary rule claim if the petitioner establishes that the state court judges "had their minds closed and were insensible to arguments based on the facts or the Supreme Court's decisions." *Id*. at 564. If a petitioner "had (and used) an unfettered opportunity to develop the facts and present his legal arguments" and the state courts fairly summarized the facts and applicable law, he cannot meet this standard. *Id*. The record shows that this happened in Javier's state court proceedings. The trial court held a

-9-

hearing, considered the testimony of multiple witnesses, and then ruled against him. The

appellate court affirmed in a 15-page opinion containing an 8-page summary of the facts, and the

Illinois Supreme Court declined to grant a PLA after considering Javier's *pro se* petition for

leave to appeal. Accordingly, under *Stone*, this court may not reach the merits of Javier's habeas

claim based on the denial of his motion to quash and suppress.

### B.    Sufficiency of the Evidence

### 1.    Standard of Review

A habeas petitioner is entitled to a writ of habeas corpus under 28 U.S.C. § 2254 if the

challenged state court decision is either "contrary to" or "an unreasonable application of" clearly

established federal law as determined by the United States Supreme Court. *See* 28 U.S.C.

§ 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000). A state court's decision is

"contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion

opposite to that reached by the Court on a question of law" or "if the state court confronts facts

that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a

result opposite to ours." *See Williams*, 529 U.S. at 405.

With respect to the "unreasonable application" prong of § 2254(d)(1), a habeas petitioner

must demonstrate that although the state court identified the correct legal rule, it unreasonably

applied the controlling law to the facts of the case. *See id*. at 407. A state court's application of

Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable.

*Harrington v. Richter*, — U.S. —, 131 S.Ct. 770, 786 (2011) ("even a strong case for relief does

not mean that the state court's contrary conclusion was unreasonable").

## 2.     Javier's Sufficiency of the Evidence Claim

The Illinois Appellate Court rejected Javier's challenge to the sufficiency of the
evidence, explaining:

> A criminal conviction will not be set aside unless the evidence is so improbable or
> unsatisfactory that there remains a reasonable doubt of defendant's guilt. *People
> v. Hendricks*, 325 Ill.App.3d 1097, 1110 (2001). The reviewing court must
> determine whether, after viewing the evidence in the light most favorable to the
> State, any rational trier of fact could have found the defendant guilty beyond a
> reasonable doubt. *People v. Young*, 128 Ill.2d 1, 49 (1989). "The trier of fact
> bears the responsibility of (1) determining witnesses' credibility, (2) determining
> the weight given to their testimony, (3) resolving conflicts in the evidence, and
> (4) drawing reasonable inferences from the evidence." *People v. Billups*, 318
> Ill.App.3d 948, 954 (2001).
>
> In order to sustain a conviction for the offense of possession of a controlled
> substance, the State must prove beyond a reasonable doubt that defendant had
> knowledge of the controlled substance and that the controlled substance was in
> defendant's immediate and exclusive control. *Daley v. El Flanboyan Corp.*, 321
> Ill.App.3d 68, 74 (2001); *People v. Neylon*, 327 Ill.App.3d 300, 305 (2002).
> Knowledge may be proven by evidence of defendant's acts, declarations or
> conduct from which it may be inferred that he knew of the existence of the
> controlled substance at the place it was found. *Daley*, 321 Ill.App.3d at 74.
> Possession can be established by evidence of actual possession or constructive
> possession. *Neylon*, 327 Ill.App.3d at 306.
>
> Here, Officer Poppish testified that he observed defendant remove a bag that was
> subsequently found to contain drugs from inside of his jacket and place it in the
> van on the driver's side. Although defendant's witnesses testified that they never
> saw him place anything in the van, both Wages and Keith testified that they
> turned their backs and went inside their home at various times during the search.
> Additionally, Keith testified that she saw a bag lying on the driver's seat of the
> van at some point. In a bench trial, it is for the trial judge to determine the
> credibility of witnesses, to weigh evidence and draw reasonable inferences from
> that evidence, and to resolve any conflicts in the evidence. *People v. Slim*, 127
> Ill.2d 302, 307 (1989). While defendant is correct in noting that his witnesses'
> testimony differs from that of Officer Poppish, the trial court apparently resolved
> the conflicts in the evidence against defendant. Viewing the evidence in the light
> most favorable to the State, we conclude that the evidence was sufficient to find
> defendant guilty of possession of a controlled substance beyond a reasonable
> doubt.

*People v. Hernandez*, No. 1-06-3173 at 14-15 (Dkt. 11-2).

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), governs Javier's sufficiency of the evidence claim. In *Jackson*, the Supreme Court held that a defendant's Fifth and Fourteenth Amendment due process rights are satisfied if, when viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original).

The Illinois Appellate Court based its ruling on Illinois law, as opposed to Supreme Court precedent. Where a state appellate court rules on the merits of an argument raised by the petitioner but does not specifically apply federal law, it is irrelevant if the standard applied by the state court is as demanding as the federal standard. *Oswald v. Betrand*, 374 F.3d 475, 477 (7th Cir. 2004) (citing *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam)). Here, the standard used by the Illinois Appellate Court tracks the federal standard as the court considered "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *People v. Hernandez*, No. 1-06-3173 at 14 (Dkt. 11-2). Moreover, the Illinois Appellate Court cited *People v. Young*, 128 Ill.2d at 49, which, in turn, cited and quoted the standard announced in *Jackson*. *Id*. The court thus finds that the state court's decision is not "contrary to" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1)

The court thus turns to whether the decision was "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See id*. Javier believes the trial court should have accepted the defense's version of events and rejected Officer

Poppish's testimony. However, "[f]ederal courts are in no position to redetermine the credibility of witnesses observed by state trial courts." *Kines v. Godinez*, 7 F.3d 674, 678 (7th Cir. 1993); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (a federal habeas court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Thus, credible testimony from a single witness is enough to support a conviction. *U.S. ex rel. Wandick v. Chrans*, 869 F.2d 1084, 1089 (7th Cir. 1989); *see also United States v. Payton*, 328 F.3d 910, 911 (7th Cir. 2003) (rejecting sufficiency challenge based on trial testimony of single witness); *Kines*, 7 F.3d at 678 ("a single witness can suffice to prove guilt beyond a reasonable doubt.").

Here, Officer Poppish testified that he and his partner stopped a van driven by Javier due to unusual driving and the failure to heed a stop sign. Officer Poppish saw Javier exit the van and place a bag on the driver's side seat that was later determined to contain heroin. Moreover, Delores Keith testified she saw a bag lying on the driver's seat after Javier exited the van. As noted above, the court must view the evidence in the light most favorable to the prosecution and then determine if a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319. The state courts believed that Officer Poppish was credible and his testimony itself – even without Keith's corroborating testimony about the bag – supports Javier's conviction. Accordingly, the state courts' decision was not "an unreasonable application of" the clearly established law announced in *Jackson*. Thus, Javier's sufficiency of the evidence claim fails.

### III.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should issue. Under 28 U.S.C. § 2253(c)(2), "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

For the reasons stated in this order, the court finds that Javier has not made a substantial showing of the denial of a constitutional right as he has not demonstrated "that reasonable jurists could debate whether the challenges in his habeas petition should have been resolved differently or that his petition adequately shows a sufficient chance of the denial of a constitutional rights that he deserves encouragement to proceed further." *Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Accordingly, the court declines to issue a certificate of appealability.

## IV.    Conclusion

For the above reasons, Javier Hernandez's request for a writ of habeas corpus under 28 U.S.C. § 2254 is denied. The court declines to certify any issues for appeal under 28 U.S.C. §

2253(c).  The clerk is directed to add Illinois Attorney General Lisa Madigan as an

additionalrespondent and enter a Rule 58 judgment terminating this case.


ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: April 8, 2013